## SCHAFF v. RIDLEHUBER. (No. 6591.)*

(Court of Civil Appeals of Texas. May 9, 1923. On Motion for Rehearing June 27, 1923. On Second Motion for Rehearing, Jan. 16, 1924. On Further Motion for Rehearing, March 5, 1924.)

**1. Death ☞67—Evidence of earnings of conductor held admissible to show damages from death of brakeman.**

In an action for the death of a railroad brakeman, who had acted as substitute conductor, and was in line for promotion to conductor, evidence as to the wages received by conductors was permissible to show the probable earnings of deceased in the near future.

**2. Master and servant ☞270(10)—Evidence moving train caused dust held admissible.**

Where plaintiff claimed her intestate was killed by falling from a slippery step on a moving locomotive tender, evidence that a moving train created suction and dust was not irrelevant or immaterial, since the dust thrown on a step which was wet would tend to make it slippery.

**3. Appeal and error ☞1050(1)—Admission of evidence substantially similar to that previously given without objection is not prejudicial.**

It is not reversible error to permit a witness to testify to a fact when substantially the same testimony has been given by another witness without objection.

**4. Trial ☞252(11)—Instruction unsupported by evidence held properly refused.**

In an action for the death of a railroad brakeman who fell from a step on a moving train which he was attempting to board, an instruction requested by defendant that, if deceased made a hop and jump to the bottom step, such action was negligent was properly refused where there was no testimony he had attempted to board the train in that manner.

**5. Master and servant ☞228(1)—Requested instruction denying recovery for contributory negligence properly refused under federal act.**

Where the action was for the death of an interstate employé, and therefore, under the federal statute, under which contributory negligence is not a defense, a requested instruction that certain acts by deceased would be negligence, and, if they caused his injury, the verdict should be for defendant, was properly refused.

**6. Appeal and error ☞216(2)—Request for further charge is necessary to support objection to charge not affirmatively erroneous.**

A proposition complaining of error in a paragraph of the court's charge does not require reversal where there was no affirmative error in that paragraph, and appellant made no request for further charge on that subject.

**7. Appeal and error ☞1004(1)—Verdict cannot be set aside as excessive unless it indicates passion and prejudice.**

An appellate court will not determine what damages its members would have allowed if they had been on the jury, but will sustain the verdict as to damages, unless it is so excessive as to indicate it was probably influenced by passion, prejudice, sympathy, or some other improper cause.

**8. Death ☞99(1)—$20,000 for death of brakeman held not excessive.**

In an action for the death of a railroad brakeman, a verdict awarding $20,000 as damages does not show passion or prejudice, and will not be set aside as excessive.

### On Motion for Rehearing.

**9. Statutes ☞117(8)—Amendment under title not mentioning receivers did not repeal existing provision relating to receivers.**

The amendment of Rev. St. 1911, art. 4694, by Laws 1915, c. 143 (Vernon's Sayles' Ann. Civ. St. 1914, art. 4694), which was entitled an act to amend that article, giving cause of action for death caused by the negligence of a corporation, its agents or servants, did not repeal the provision of the original article not changed by the amendment authorizing recovery in such action against a receiver, though the title did not mention receivers.

### On Second Motion for Rehearing.

**10. Master and servant ☞265(3)—Burden of proof on plaintiff to show negligence, causing injury, under federal statutes.**

In action for death under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) and Safety Appliance Act (U. S. Comp. St. § 8605 et seq.), burden of proof rests on plaintiff to establish negligence and that it was proximate cause.

**11. Master and servant ☞129(6)—Law of proximate cause applicable to liability under federal statutes.**

Rules of law generally applicable to issue of proximate cause control in action for death under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) and Safety Appliance Act (U. S. Comp. St. § 8605 et seq.)

**12. Appeal and error ☞1169(5)—Negligence in both respects alleged held to be proved under charge.**

Where petition alleged two independent grounds of negligence, the first that tender tank leaked, causing steps to be slippery, and the second that wooden tread had been worn, so as to present slanting edge, and cause was submitted to jury on general charge, in which these two grounds were submitted in the alternative, a reversal is required, if there was no evidence in support of either one of two grounds.

**13. Evidence ☞588—Jury not required to accept testimony of witness, especially where inconsistent with properly drawn inferences.**

The jury are not required to accept in toto testimony of any witness, especially where inconsistent with inferences properly drawn from other evidence.

**14. Master and servant ☞278(6)—Finding of negligence as to brakeman sustained.**

In action for death of brakeman, alleged to result from falling while attempting to board

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction April 23, 1924.

train with slippery step, evidence *held* sufficient to show negligence.

### On Further Motion for Rehearing.

**15. Witnesses** ☞50—**Relationship of witnesses only goes to weight of testimony, and not to admissibility.**

The fact that witnesses are related to plaintiff only goes to weight, and not to admissibility, of their testimony.

Appeal from District Court, McLennan County; Jas. P. Alexander, Judge.

Action by Mrs. Beerah Ridlehuber, as administratrix, against C. E. Schaff, as receiver of the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

Spell, Naman & Penland, of Waco, for appellant.

Williams & Williams and Conway & Scharff, all of Waco, for appellee.

JENKINS, J. Appellee brought this suit to recover damages for the death of her husband, alleged to have been killed through the negligence of appellant. Judgment was rendered in favor of appellee for $20,000.

The alleged grounds of negligence were that the step of the tender of an engine of the railway company was worn; that the tender leaked, and caused the step to become slippery, and that appellee's husband, in attempting to get upon the tender, and in the proper discharge of his duty, slipped, fell, and was killed by being run over by the tender.

Appellant's first proposition is that Revised Statutes 1911, art. 4694, is unconstitutional, in that the caption to said act did not authorize the inclusion of receivers, and was therefore in violation of section 35; art. 3, of the Constitution of this state. The caption of the act referred to is as follows:

"An act to amend article 4694 of the Revised Civil Statutes of 1911, giving cause of action where injuries resulting in death is caused by the negligence of a corporation, its agents or servants, and declaring an emergency."

Section 1 of this act is as follows:

"1. When the death of any person is caused by the neglect or carelessness of the proprietor, owner, charterer or hirer of any railroad, steamboat, stage coach or other vehicle for the conveyance of goods, passengers, or by the unfitness, neglect or carelessness of their servants or agents; when the death of any person is caused by the neglect or carelessness of the receiver or receivers, or other person or persons in charge or control of any railroad, or their servants or agents; the liability of receivers shall extend to cases in which the death may be caused by reason of the bad or unsafe condition of the railroad or machinery or other reason or cause by which an action may be brought for damages on account of injuries, the same as if said railroad was being operated by the railroad company." Gen. Laws 33d Leg. p. 288 (Vernon's Sayles' Ann. Civ. St. 1914, art. 4694).

It will be observed that the caption does not refer to receivers, and it is for this reason that appellant contends that, in so far as it relates to receivers, it is unconstitutional. The article amended included receivers. We hold that the failure of the caption to mention receivers did not repeal the law as it formerly existed. Holman v. Cowden (Tex. Civ. App.) 158 S. W. 571; Pasture Co. v. Carpenter (Tex. Civ. App.) 168 S. W. 408; Id., 109 Tex. 103, 200 S. W. 521. Should we be in error as to the statute of this state with reference to the responsibility of receivers, this would be immaterial in the instant case, for the reason that the deceased at the time of his death was engaged in interstate commerce, and the federal statute upon this issue includes receivers.

Appellant's second proposition is that the court erred in refusing to instruct a verdict for the defendant, for the reason that the evidence does not raise any issue for the jury. We overrule this contention, for the reason that the evidence is sufficient to raise the issue of negligence on the part of appellant, in that the evidence showed that the engine leaked; that the steps were worn and were wet from the leakage, and that deceased probably slipped when attempting to board the train. The deceased had thrown a switch, and was standing near the railway track. It was proper for him to attempt to board the train by the use of the steps referred to. He was seen near the track as the train approached him. He was seen to fall from where the step was situated. The reasonable inference is that he attempted to board the train, and that his foot slipped, causing him to fall under the engine. It is true that a witness for the appellant, a negro, who was on a platform some distance away, testified that the deceased raised his foot, and that the same was struck by the steps before he got upon them. This testimony was sufficient to raise the issue as to the manner in which deceased was killed. The jury decided this issue in favor of appellee. The evidence not only justified the submission of the issue, but is sufficient to sustain the finding of the jury.

[1] Appellant's third proposition is that it was error to permit the witness Weatherred, a train conductor, to testify as to what were his earnings as such conductor at the time of the death of Ridlehuber. The testimony showed that Ridlehuber had been in the employ of the railroad company for a number of years, and that he was a brakeman at the time, and also a substitute conductor, and that he was in the line of promotion. Such testimony was permissible to show the proba-

ble earnings of the deceased in the near future.  Hines v. Walker (Tex. Civ. App.) 225 S. W. 837.

[2, 3] Appellant's fourth proposition is that it was error to permit a witness to testify that, when a train was moving, it created suction and dust, the grounds for such objection being that the testimony was irrelevant and immaterial.  We do not think that it was either irrelevant or immaterial, for the reason that, if the train created suction, it would throw dust on the steps, and, as the leakage cause the steps to be wet, they would probably be in a slippery condition.  Besides this, the witness Payne testified, without objection, to substantially the same state of facts.  Strachbein v. Gilmer (Tex. Civ. App.) 202 S. W. 333; Hadnott v. Hicks (Tex. Civ. App.) 198 S. W. 359.  These cases reiterate the well-recognized rule that it is not reversible error to permit a witness to testify to a state of facts when substantially the same testimony has been given by another witness without objection.

[4, 5] Appellant objects to the refusal of the court to charge the jury that, if the deceased, Ridlehuber, in getting upon the steps in question, made a hop and a jump to the bottom step, and such action was negligence on the part of Ridlehuber, and tended directly to cause his injury, they would find for the defendant.  There was no error in refusing to give this charge.  There was not testimony that Ridlehuber attempted to board the train in this manner at the time he received the injury from which he died.  The only reason that could be assigned for giving such a charge would be that such act was contributory negligence on the part of deceased.  Under the federal statute, contributory negligence is not a defense where an employé is injured.  The charge required the jury, in the event they so found, to return a verdict for the defendant.

The charge refused, as complained of in the sixth proposition, was improper, because it was upon the weight of the evidence.  The seventh proposition is based on the assumption that there was no evidence sufficient to require the case to be submitted to the jury.  We have disposed of this issue under our remarks on the second proposition.  We do not think the charge of the court is subject to the criticism submitted under appellant's proposition 7a.  Nor do we think that the charge is subject to the criticism submitted under appellant's eighth and ninth propositions.  The evidence is sufficient to show that the steps of the tender were defective within the meaning of the Boiler Inspection Act of February 17, 1911, as amended in 1915 (U. S. Comp. St. 1918, §§ 8630–8639d), and as applied under rule 153 of the Interstate Commerce Commission, which provides:

"(a) *Feed Water Tanks.*—Tanks shall be maintained free from leaks, and in safe and suitable condition for service.  Suitable screens must be provided for tank wells or tank hose."

"(b) Not less frequently than once each month the interior of the tank shall be inspected and cleaned, if necessary.

"(c) Top of tender behind fuel space shall be kept clean and means provided to carry off waste water.  Suitable covers shall be provided for filling holes."

[6] The tenth proposition complains of the fifth paragraph of the court's charge.  No objection was made to this prior to submitting the case to the jury; but had there been there was no affirmative error in this paragraph of the court's charge.  Had appellant desired a further charge on this subject, he should have requested the same.

[7, 8] The eleventh proposition submits appellant's contention that the verdict is excessive.  An appellate court is not called upon to state what damages its members would have allowed had they been members of the jury; but the verdict of the jury as to damages will be sustained in all cases, unless it is so excessive as to indicate that it was probably influenced by passion, prejudice, sympathy, or some other improper cause.  We cannot say that such is shown to be the case by the testimony herein; and therefore we overrule appellant's contention as to the verdict being excessive.

Finding no reversible error of record, the judgment of the trial court is affirmed.

### On Motion for Rehearing.

[9] Appellant, in his motion for a rehearing, insists that we were in error in holding that the plaintiff was entitled to recover on account of the death of her husband; the proposition being that the act of 1913 (General Laws, p. 288) is unconstitutional in so far as it includes receivers, for the reason that receivers are not mentioned in the caption of the act.  The right to recover on account of the wrongful death of another did not exist at common law, but is purely statutory.  The original act in this state, giving the right to recover damages on account of the wrongful death of another, was adopted in 1860, and was carried forward in the Revised Statutes of 1879 as article 2899.  There were two sections to this article.  The article read as follows:

"An action for actual damages on account of injuries causing the death of any person, may be brought in the following cases:

"1. When the death of any person is caused by the negligence or carelessness of the proprietor, owner, charterer or hirer of any railroad, steamboat, stagecoach or other vehicle for the conveyance of goods or passengers or by the unfitness, gross negligence or carelessness of their servants or agents.

"2. When the death of any person is caused by the wrongful act, negligence, unskillfulness, or default of another."

In Turner v. Cross, 83 Tex. 218, 18 S. W. 578, 15 L. R. A. 262, it was held that article

2899 did not include receivers. To meet this omission, on April 11, 1892, the first section of said article (which has been carried forward in Revised Statutes of 1905 as article 3017) was amended so as to include receivers of railroads, their agents and servants. It was held by the Court of Civil Appeals, in Ritz v. City of Austin, 1 Tex. Civ. App. 455, 20 S. W. 1029, and in Searight v. City of Austin, 42 S. W. 857, that the word "another" in section 2 of said article meant another person, and did not include a corporation. Writs of error were denied in these cases, thus making them decisions of the Supreme Court. The doctrine announced in these cases was affirmed by the Supreme Court in answer to certified question in Elliott v. City of Brownwood, 106 Tex. 292, 166 S. W. 1129. It was to meet these decisions that the act of 1903 was adopted. Article 3017 was carried forward in the Revised Statutes of 1911 as article 4694. The caption of the act of April 17, 1913, reads as follows:

"An act to amend article 4694 of the Revised Civil Statutes of 1911, giving cause of action where injuries resulting in death is caused by the negligence of a corporation, its agents or servants, and declaring an emergency."

This caption means that the article is amended by giving cause of action, etc., or so as to give cause of action, etc. The amended act re-enacts the first section of article 4694 verbatim, except the word "neglect" is substituted for "negligence." Section 2 of said act is made to read as follows:

"When the death of any person is caused by the wrongful act, neglect, unskillfulness or default of another person or corporation, their agents or servants."

We quote from appellant's motion for a rehearing as follows:

"From a casual inspection of the title to act No. 7235, quoted above, it is apparent, as Judge Phillips in his opinion states, that the act was intended merely to enlarge article 7235 so as to have included in its designation of counties privilege to prohibit stock running at large."

In the case referred to, Ward v. Carpenter, cited in our original opinion herein, it was held that the act which omitted Matagorda county did not thereby repeal the former act, which included Matagorda county. It is more plainly evident that the act of April, 1913, was meant merely to enlarge the scope of article 4694 than was the case in Ward v. Carpenter. If there could be any doubt that such was the intention of the Legislature in enacting this amendment, that would be set to rest by section 2 of said act, which reads as follows:

"Sec. 2. That all laws in conflict herewith be repealed. The Supreme Court having held that the present article does not allow recovery for injuries resulting in death caused by the wrongful act, neglect, unskillfulness or default of a corporation, its agents or servants,

creates an emergency and an imperative public necessity, demanding the suspension of the rule requiring bills to be read on three several days in each House, and said rule is hereby suspended, and that this act take effect from and after its passage, and it is so enacted."

In Mortgage Co. v. Hardy, 93 Tex. 298, 55 S. W. 171, the court said:

"In view of the previous decisions in this and other courts and of the course of legislation based upon their authority, it must be held that such a reference to the number of an article in a code, such as our Revised Statutes, is sufficient in the title of an act amendatory thereof to allow any amendment germane to the subject treated in the article referred to."

The amendatory article of 1913 referred to the article of the Revised Statutes to be amended, and indicated in what respect it was to be amended.

In our original opinion herein we said:

"The evidence is sufficient to raise the issue of negligence on the part of appellant, in that the evidence showed that the engine leaked; that the steps were worn and were wet from leakage."

We should have omitted the statement "the steps were worn." There is no evidence that they were worn beyond such as would be necessarily inferred from their use, and no evidence to indicate that they were worn in such a manner as to render them to any extent unsafe. In our opinion herein we also used the following language:

"Deceased was seen to fall from where the steps were situated."

We did not mean by this language to indicate that he was seen to fall from the steps, but only that he was in the vicinity of the steps when he was seen to fall. No one saw him on the steps.

After a very careful examination of the testimony in this case, we have arrived at the conclusion that we were in error in affirming the judgment of the trial court, in that the evidence is not sufficient to show negligence upon the part of appellant. It would have been more satisfactory if this case had been submitted on special issues, instead of by general charge. As in all instances, we are loath to disturb the verdict of a jury, but we think that the evidence in this case as to the negligence of the appellant is too meager to allow the judgment to stand.

For the reasons stated, our former judgment herein, affirming the judgment of the court below. is set aside, said judgment is here reversed, and this cause is remanded for a new trial.

Motion granted.

Reversed and remanded.

On Second Motion for Rehearing.

McCLENDON, C. J. In view of the fact that two of the judges participating in the

former judgments and opinions in this case are no longer members of the court, permission to reargue the case was granted upon request of counsel. We have carefully considered all the questions presented in the appeal, and have reached the conclusion that the only matter requiring further consideration in a written opinion is that involved in the holding of the court upon rehearing that the evidence does not support the trial court's judgment. In no other respect will the former opinions of this court be disturbed.

[10, 11] This was an action by the surviving wife of an employee of the receiver of a railway company, for compensatory damages for the death of her husband, alleged to have been caused by the negligence of the receiver. Deceased, at the time of his death, was engaged in interstate commerce; therefore the action is governed by the federal Employers' Liability Act (U. S. Comp. St. § 8657–8665) and the Safety Appliance Act (U. S. Comp. St. § 8605, et seq.). This is conceded by both parties. The burden of proof rested upon appellee to establish negligence of the appellant, and that such negligence was the proximate cause of her husband's death. The rules of law generally applicable to the issue of proximate cause control in this class of cases. Lumber Co. v. Beatty, 110 Tex. 227, 218 S. W. 363; Railway v. Behne (Tex. Com. App.) 231 S. W. 354; Davis v. Wolfe, 44 Sup. Ct. 64, 68 L. Ed. ——.

The petition alleged two independent grounds of negligence: First, that the tender tank leaked, thereby causing the engine steps to be slippery; and, second, that the wooden tread to the bottom step had been worn to such an extent as to present a slanting edge, thereby rendering it unsafe. It was alleged that deceased, while in the discharge of his duties, was attempting to board the engine, and that as a result of the negligence alleged his foot slipped from the step, resulting in his fall and death.

[12] The cause was submitted to a jury upon a general charge, in which these two grounds of negligence were submitted in the alternative. If therefore there was no evidence in support of either one of the two grounds of negligence, a reversal of the judgment is required. Lancaster v. Fitch, 112 Tex. 293, 246 S. W. 1015; Weisner v. Railway (Tex. Com. App.) 207 S. W. 904. With the charge so framed, the burden of proof rested upon appellee to establish negligence in both the respects alleged, and also to establish that deceased met his death by slipping from the step.

The evidence is without contradiction that the packing around the valve stem was not sufficiently tight to prevent leaking when the tank was full. This valve stem extended from the bottom of the tank, through a tool box, up to the top of the tank, where it was operated by hand. The stem was a small iron rod, and from the bottom of the tool box to the top of the tank it was inclosed in a small iron pipe, at the top of which was a nut, which screwed down upon soft rope packing. When the tank was full, the surging of the water, caused either by the operation of filling the tank or by the motion of the train produced a leaky condition. The water thus escaping ran over the side of the tank, through the gangway, and onto the steps. The evidence showed that this manner of valve construction was used almost universally on locomotives, and passed the inspection of the Interstate Commerce Commission inspectors. The evidence also showed that the steps were exposed to all conditions of weather, and were necessarily wet in damp or rainy weather, and that sand accumulations on the cab floor were frequently washed off by a hose, and this water passed out through the gangway and onto the steps, causing them to be frequently wet.

While the writer has some doubt whether, under the evidence, this leaky condition around the valve stem constituted negligence, and, if so, whether it could be regarded as the proximate cause of an injury of this character, he does not feel disposed to dissent from the conclusion upon this issue reached by the eminent jurists who sat in the case on the original hearing. The evidence shows that deceased met his death under the following circumstances:

The train in question was a local freight, operating between Waco and Granger, which left Waco in the morning of August 4, 1920, and arrived at Granger about 4:40 in the afternoon of that day. It had just taken water at a water tank, and the steps were wet from the leak above noted. Deceased had gone ahead some little distance to throw a switch, at which point he waited for the engine to reach him. The ground at that point was smooth, level, and flush with the ties. The only witnesses who testified to having seen him at or about the time of the accident were the fireman, who was seated in the cab on the left or east side of the engine (the train was moving south at four or 5 miles an hour, and deceased was on the west or right side of the track); the conductor who was towards the rear of the train, hanging onto the side of one of the cars; and Robert Fails, a negro employee of an oil mill, who was 125 yards west of the track. The conductor did not see deceased at the instant of the accident, but saw him immediately before that time, when he was a few feet from the engine and approaching the steps. The brakeman saw above the gangway the upper part of his body, down to the lower part of his chest, and saw him fall or disappear. Fails testified to seeing the accident just as it happened. According

to his testimony deceased reached for the handholds with his left foot on the ground. He states positively that his foot never was on the step but that the step struck him at the top of his right shoe, and deceased then fell and was killed. Deceased was about 5 feet 10 or 10½ inches high, weighing about 170 pounds. The gangway of the engine was between 4½ and 5 feet above the top of the rails. We may fairly assume that it was at least 5 feet above the surface of the ground. From the testimony of some of the witnesses it may reasonably be inferred that, if deceased was standing on the ground, only his chin would be visible from the inside of the engine above the gangway.

In the opinion on rehearing it was held that the evidence was not sufficient to show that the steps were worn "beyond such as would be necessarily inferred from their use, and no evidence to indicate that they were worn in such a manner as to render them to any extent unsafe." It was also there stated:

"In our opinion herein' we also used the following language: 'Deceased was seen to fall from where the steps were situated.' We do not mean by this language to indicate that he was seen to fall from the steps, but only that he was in the vicinity of the steps when he was seen to fall. No one saw him on the steps."

We have carefully reviewed the statement of facts, and, while the evidence would warrant a finding that the steps were not worn to any substantial extent, there is evidence that the wooden tread on the bottom step was worn through the center at the front or outer edge, and that this wearing was to such an extent as to render it unsafe to one attempting to board the engine while in motion. We think it unnecessary to quote the evidence on this point. It is collated in appellee's motion for rehearing. We hold the evidence sufficient to support the judgment in this regard.

From the above statement of the testimony, it is clear that there is no direct evidence that deceased met his death by slipping from the step. Fails was the only witness who testified to having seen the accident in sufficient detail to explain the exact manner in which deceased met his death. It is clear, however, from all the evidence, that deceased was attempting to board the engine by means of the steps. The testimony of Fails negatives the theory that deceased slipped from the steps. If this testimony were undisputed, and there were no circumstances which tended to discredit it, other than the fact that the witness was in the employ of appellant, a serious question might be presented whether appellee had met the burden imposed by the law of proving her case by a preponderance of the evidence. If the testimony of Fails were eliminated entirely,

then we think it a fair inference to be drawn from the facts and circumstances in evidence that deceased met his death by slipping from the step. The evidence viewed from that standpoint would be in part circumstantial; the circumstances being that deceased was attempting to use a defective step in the proper discharge of his duty, that the jury were warranted in assuming that he was exercising proper care for his own safety, and that no other satisfactory explanation for the accident was afforded by the evidence. Cases in which like inferences have been upheld, where the evidence was certainly no stronger than in the present case, are by no means rare. Bock v. Dry Goods Co. (Tex. Com. App.) 212 S. W. 635; Hutcherson v. Street Ry. Co. (Tex. Com. App.) 213 S. W. 931; Cement Co. v. Moreno (Tex. Com. App.) 215 S. W. 444; Railway v. Rowe (Tex. Civ. App.) 224 S. W. 928, affirmed in this regard (Tex. Com. App.) 238 S. W. 908; Railway v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96; Myers v. Coal Co., 233 U. S. 184, 34 Sup. Ct. 559, 58 L. Ed. 906. It would probably be impossible to find two cases where the same combination of circumstances is presented. The facts in the cited cases illustrate very forcefully the principle which we think has application to the state of facts with which we are now dealing.

[13, 14] The evidence of Fails does not stand uncontradicted by circumstances. The jury were not required to accept in toto the testimony of any witness. Railway v. Shelton (Tex. Com. App.) 208 S. W. 915. Especially is this true where such testimony is inconsistent with inferences properly drawn from other evidence in the case. The testimony of Fails that deceased had his left foot on the ground at the time the step struck his right shoe is in direct conflict with the testimony of the fireman that he saw the lower part of deceased's chest above the gangway, if we adopt, as was the jury's right, the reasonable conclusion to be deduced from the testimony of a number of witnesses, that the height of the gangway was too great to expose that part of deceased's body to the view of one situated as was the fireman. We do not mean to say that this is a necessary conclusion from the testimony in this regard, but we do say that it is a reasonable deduction therefrom. The jury may have fairly concluded from the testimony that deceased was not upon the ground at the time the fireman saw him, which conclusion would necessarily be in conflict with the testimony of Fails that his left foot was on the ground. The fair inference from the testimony would warrant disregarding the evidence of Fails, at least in this respect, and with this evidence disregarded the reasonable inference may be drawn from the testimony that deceased met his death by slipping from the defective step.

Appellee's motion for rehearing is granted. The former judgment of this court, reversing the trial court's judgment and remanding the cause to that court for a new trial, is set aside, and the judgment of the trial court is hereby affirmed.

### On Further Motion for Rehearing.

In a lengthy motion for rehearing, supported by a written argument, counsel for appellant, with great earnestness and zeal, assail the conclusions reached in the last opinion in this case, and particularly the conclusion that the evidence warranted disregarding the evidence of the witness Fails, on the ground that he was contradicted by circumstances which could be fairly deduced from the testimony of other witnesses. There is also some criticism of certain statements made in the opinion concerning the evidence.

A further review of the record, in the light of the elaborate motion and argument, does not convince us that we were in error in holding that the testimony of the fireman, who was seated in the cab on the east side of the engine, to the effect that he saw as low as the lower part of Ridlehuber's chest above the gangway, warranted the conclusion that Ridlehuber was not upon the ground at that time. The fireman, it is true, was not upon a level with the gangway, but was seated in the fireman's seat. In this position he could, of course, see more of Ridlehuber's body than one whose eye was on a line with the gangway. However, he was across the engine from the gangway, and Ridlehuber was very close to the side of the engine. If Ridlehuber had been standing upon the ground, the factors determining how much of his body could be seen by the fireman would be the latter's distance from and the elevation of his eyes above the gangway, the elevation of the gangway above the ground, the distance of Ridlehuber from the gangway, and whether he was in an erect position. Upon none of these elements is the evidence conclusive. That Ridlehuber was in the act of reaching for the handholds to board the engine, and must necessarily have been very close to its side, cannot be seriously doubted.

[15] Aside from this feature of the case, however, the jury were warranted in rejecting Fails' version of the accident. Two of the witnesses, one a brother and the other a brother-in-law of Ridlehuber, testified to a conversation with Fails, in which he stated that he did not see the accident, and did not know how it happened; "that the first intimation that he had that there had been an accident was that somebody said, 'Look at that white man.'" The fact that these witnesses were related to Ridlehuber, and were therefore not disinterested, only went

to the weight, and not to the admissibility, of their testimony. That Fails was an employee of appellant placed his testimony also in the category of that of an interested witness. These were matters which the jury were warranted in considering in the exercise of their peculiar prerogative of passing upon the credibility of the witnesses and the weight to be given to their testimony. The evidence tending to support the conclusion that Ridlehuber slipped from the step is of such a character that we would not feel justified in setting aside the verdict upon that issue.

Objection is made to the statement in the opinion that Fails was "125 yards west of the track." The witnesses testifying upon this point placed this distance all the way from 50 feet to 125 yards. No measurements were taken, and the distance was only estimated by the several witnesses. In giving the distance in the opinion, we were merely stating the evidence most strongly for appellee, the only proper viewpoint when passing upon the sufficiency of the evidence as a matter of law to support the verdict. The opinion must be read in the light of the particular question before the court.

The motion for rehearing is overruled.